*1091 OPINION OF THE COURT
Memorandum.
The order of the Appellate Division should be reversed, without costs, and the matter remitted to Family Court, Dutchess County, for further consideration in accordance with this memorandum.
Respondent, Mark T., is the natural father of the proposed adoptive child, Andrew, who was born out of wedlock on September 11,1977. Mark never married the child’s mother, Catherine H., but they lived together for several years prior to their separation in 1979. Catherine and her husband, Timothy De V., whom she married in 1982, wish to adopt Andrew. They seek to do so without the consent of Mark, who opposes the adoption. After a hearing, Family Court dismissed the petition, finding that Mark’s refusal to consent barred the adoption because he had not evinced “an intent * * * to forego his parental rights,” and the Appellate Division affirmed.
In 1980, the Legislature established guidelines for determining whether the father of a child born out of wedlock has demonstrated a substantial relationship with his child, giving him a right to veto the child’s adoption (L 1980, ch 575, § 1; see, Caban v Mohammed, 441 US 380, 393). Under the statute, a natural father seeking to bar the adoption of his child must show that he has: “maintained substantial and continuous or repeated contact with the child as manifested by: (i) the payment by the father toward the support of the child of a fair and reasonable sum, according to the father’s means, and either (ii) the father’s visiting the child at least monthly when physically and financially able to do so and not prevented from doing so by the person or authorized agency having lawful custody of the child, or (iii) the father’s regular communication with the child or with the person or agency having the care or custody of the child, when physically and financially unable to visit the child or prevented from doing so by the person or authorized agency having lawful custody of the child” (Domestic Relations Law § 111 [1] [d]). Only after the natural father establishes his right of consent to the adoption, by satisfying both the support and the communication provisions of the statute, does the court proceed to determine whether he has forfeited that right by evincing “an intent to forego his * * * parental * * * rights and obligations as manifested by his * * * failure for a period of six months to visit the child and communicate with the child or person having legal custody of the child, although able to do so” (Domestic Relations Law § 111 [2] [a]; see generally, Matter of Amy SS, 64 NY2d 788, revg 100 AD2d 657; Matter of Corey L v Martin L, 45 NY2d 383).
*1092 Family Court found, and the Appellate Division affirmed, that Mark had maintained constant telephone communication with Andrew and Catherine; that his financial condition precluded travel from California to New York (where Catherine and Andrew ultimately settled); that when he did come to New York, Catherine refused to allow him to see his son; and that after her marriage to Timothy, she discouraged all contact between Mark and Andrew. These affirmed findings may justify a conclusion that Mark met the communication requirement of section 111 (1) (d) (iii), and did not abandon his child within the meaning of section 111 (2) (a). But neither court considered whether Mark satisfied, or was somehow excused from satisfying, the threshold support provision of section 111 (1) (d) (i), and the matter must therefore be remitted to Family Court.
In view of this disposition, it is premature to address Mark’s argument, raised both before the Appellate Division and Family Court, that section 111 (1) (d) of the Domestic Relations Law violates his constitutional right of equal protection.
Chief Judge Wachtler and Judges Jasen, Meyer, Simons, Kaye and Alexander concur.
Order reversed, etc.