McCarthy, J.
Respondent and Amanda A. (hereinafter the mother) are the biological parents of Asia ZZ. (born in 2001). Petitioner married the mother in 2004. In 2011, petitioner commenced this proceeding to adopt the child. After a hearing, Surrogate’s Court determined, among other things, that respondent’s consent to the adoption was not required because he had failed to communicate with the child or her caretakers for a period in excess of six months (see Domestic Relations Law § 111 [1] [d]). Respondent appeals.
Surrogate’s Court properly determined that respondent’s consent to the adoption was not required. Consent of a biologi *866 cal father of a child of a certain age who was born out-of-wedlock is required only if the father “maintained substantial and continuous contact with the child as manifested by” two separate actions: the payment of “a fair and reasonable sum” of child support, and “visiting the child at least monthly when physically and financially able to do so and not prevented from doing so by [the child’s custodian]” (Domestic Relations Law § 111 [1] [d] [i], [ii]). If the father is unable to visit or is prevented from visiting, he can fulfill the second — or communication — provision of substantial and continuous contact by regularly communicating with the child or the child’s custodian (see Domestic Relations Law § 111 [1] [d] [iii]). Although Domestic Relations Law § 111 (2) (a) provides that consent is not required of a parent or custodian who evinces an intent to forgo parental rights, courts do not reach that subdivision until after determining that the person is someone whose consent is required for the adoption pursuant to Domestic Relations Law § 111 (1) because the support and communication provisions are both satisfied (see Matter of Andrew Peter H. T., 64 NY2d 1090, 1091 [1985]). Here, as the communication provision was not satisfied, we do not reach Domestic Relations Law § 111 (2) (a).
Respondent lived in the same county as the child, and the record lacks any proof that he was physically or financially unable to visit her. He never sent the child gifts or cards. The mother testified that respondent last exercised visitation with the child in January 2003. He sought visitation once in March 2003, but the child was unavailable. Respondent testified that he could not locate the mother thereafter, indicating that she prevented him from seeing the child, but Surrogate’s Court found that respondent did not attempt even minimal efforts to locate her. We give deference to the court’s credibility determinations resolving conflicting testimony in favor of petitioner’s witnesses rather than respondent (see Matter of Dakiem M. [Demetrius O. — Dakiem N.], 94 AD3d 1362, 1362-1363 [2012], lv denied 19 NY3d 807 [2012]; Matter of Mia II. [Theresa JJ.— Michael II.], 75 AD3d 722, 723-724 [2010], lv denied 15 NY3d 710 [2010]). Respondent testified that he did not ask the mother’s father for her address, despite knowing where he lived, and did not look in the phone book to see if she was listed. When respondent saw the mother in person in 2006, and again in Family Court regarding support in 2008, he did not ask for her- address or phone number or inquire about the child. Under these circumstances, Surrogate’s Court did not err in determining that respondent did not maintain substantial and continuous contact with the child, specifically as to the communication provision (see Matter of Key anna AA., 35 AD3d 1079, 1080-1081 *867 [2006]; Matter of Sergio LL., 269 AD2d 699, 700 [2000]).* Thus, respondent’s consent to the child’s adoption was not required.
Mercure, J.P., Kavanagh, Stein and Egan Jr., JJ., concur. Ordered that the order is affirmed, without costs.

 Because the support and communication provisions must both be satisfied to require consent to adoption (see Domestic Relations Law § 111 [1] [d]), we need not address the support provision.